Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 14, 2004      Decided November 2, 2004

No. 03-1153

CHEVRONTEXACO EXPLORATION & PRODUCTION CO.,
A DIVISION OF CHEVRON U.S.A. INC., ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

DUKE ENERGY TRADING AND MARKETING, L.L.C., ET AL.,
INTERVENORS

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

*Jon L. Brunenkant* argued the cause for petitioners. With him on the briefs were *Cheryl J. Walker*, *Carolyn S. Hazel*, *Charles J. McClees, Jr.*, *Frederick T. Kolb*, and *Douglas W. Rasch*.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Lona T. Perry*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor.

Before: GINSBURG, *Chief Judge*, and RANDOLPH and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: ChevronTexaco and other shippers of natural gas ("Shippers") petition for review of two orders in which the Federal Energy Regulatory Commission, pursuant to § 4 of the Natural Gas Act, 15 U.S.C. § 717c, held the ANR Pipeline Company had properly calculated and was entitled to collect its annual cashout surcharge for 2001. The Commission also concluded, however, that the approved method of calculation prescribed in the pipeline's filed tariff was "not producing just and reasonable results," and it therefore initiated a proceeding under § 5 of the Natural Gas Act to devise a new method. The Shippers argue that because the Commission found the prescribed method of calculating the surcharge led to an unjust and unreasonable result, the Commission was bound either to reject the surcharge or to accept it subject to refund.

A method or formula for calculating a rate, also called a "rate rule," when enshrined in an approved tariff, is itself a "filed rate"; it is therefore subject to change at the instance of the Commission pursuant only to § 5 of the NGA, which authorizes the Commission to establish the rate "to be thereafter observed." 15 U.S.C. § 717d(a). Therefore, we hold the Commission correctly confined itself, in reviewing the pipeline's proposed 2001 surcharge, to determining whether (1) the costs to be recovered were prudently incurred and (2) the surcharge was calculated in accordance with the approved method.

## I. Background

When the volume of natural gas a shipper puts into the ANR pipeline does not match the volume it takes out over a

specified period of time, that shipper must either eliminate the imbalance by trading with other shippers or "cashout" the imbalance by buying gas from or selling gas to the pipeline itself, at a price pegged to certain market indices. For each dekatherm (Dth) of gas reconciled through the cashout system, the shipper must also pay ANR a surcharge, which is calculated and set annually at an amount determined to allow the pipeline company to recover its costs of operating the cashout system for the previous year. ANR calculates the surcharge rate for each year according to the method prescribed in its tariff and files the surcharge rate with the Commission for approval.

On May 1, 2002 ANR filed a proposed surcharge rate of $.4464/Dth to recover its 2001 costs. The Shippers objected to the new surcharge, which was nearly three times the surcharge for the previous year. Pursuant to § 4 of the NGA, the Commission then accepted but suspended the surcharge for up to five months. The Shippers challenged the pipeline's claimed cost of operating the cashout system and proposed a new way of calculating the surcharge. The Commission, however, finding the pipeline's costs in operating the cashout system were prudently incurred and the surcharge had been calculated in accordance with the rate rule in the pipeline's tariff, ultimately approved the new surcharge. *ANR Pipeline Co.*, 101 F.E.R.C. ¶ 61,123 (2003).

The Commission went on, nonetheless, to hold that the approved method of calculating the surcharge had become "unjust and unreasonable in at least two respects." First, it did not allow some shippers, including the petitioners, "an adequate opportunity to resolve their imbalances" and, second, the carryforward provision allowed for "wide swings in the surcharge from year to year." Because the Commission did not believe it then had "sufficient facts before [it] to devise a just and reasonable mechanism pursuant to section 5 of the Natural Gas Act," the agency opened a further proceeding to remedy those defects.

The Shippers petitioned for rehearing, requesting that the Commission reject the $.4464/Dth surcharge and "instead

require ANR to keep in effect its previously effective sur-charge of $0.1508/Dth until a new just and reasonable sur-charge is derived." Alternatively, the Shippers sought "clari-fication that the $0.4464/Dth surcharge [was] being collected subject to refund."

The Commission denied rehearing, holding that "ANR is entitled to continue recovering the rates provided for in its approved tariff until the Commission acts under NGA § 5 to fix the just and reasonable rate 'to be thereafter observed.'" As the pipeline had not proposed to change the method of calculating the surcharge, "any modification in these rates . . . would occur pursuant to NGA § 5," which provides only prospective relief. Accordingly, "there can be no refund." *ANR Pipeline Co.*, 103 F.E.R.C. ¶ 61,065, 61,205 (2003).

## II. Analysis

The Natural Gas Act requires that "[a]ll rates and charges made, demanded, or received by any natural-gas company . . . be just and reasonable," and declares "any such rate or charge that is not just and reasonable . . . unlawful." 15 U.S.C. § 717c(a). To make good this policy, the Commission is given two distinct powers: it may accept or reject a pipeline's rate filings under § 4, and it may set rates upon its own initiative under § 5.

Pursuant to § 4, "pipelines must file with the Commission all rates and any change they propose in their rates." *Sea Robin Pipeline Co. v. FERC*, 795 F.2d 182, 183 (D.C. Cir. 1986). The pipeline bears the burden of showing its proposed rate is just and reasonable. *Id.* If the Commission harbors any doubt on that score, it may hold "a hearing concerning the lawfulness of such rate," 15 U.S.C. § 717c(e), but in the end its options are limited to "acceptance (in whole or in part) or rejection of the pipeline's proposed rate[ ]." *Sea Robin*, 795 F.2d at 183. Further, "[t]he Commission need not con-fine rates [under the NGA] to specific, absolute numbers but may approve," as it had done here, "a tariff containing a rate 'formula' or a rate 'rule.'" *Transwestern Pipeline Co. v. FERC,* 897 F.2d 570, 578 (D.C. Cir. 1990).

When the Commission finds that a previously accepted rate has become "unjust, unreasonable, unduly discriminatory, or preferential," the Commission, pursuant to § 5, "determine[s] the just and reasonable rate . . . to be thereafter observed and in force." 15 U.S.C. § 717d(a). In proceeding under § 5, however, the Commission bears the burden of adducing substantial evidence to prove (1) the pipeline's existing rate is unjust and unreasonable and (2) the rate determined by the Commission is just and reasonable. *"Complex" Consol. Edison Co. of N.Y., Inc. v. FERC*, 165 F.3d 992, 1003 (D.C. Cir. 1999); *Pub. Serv. Comm'n of N.Y. v. FERC (Transco)*, 642 F.2d 1335, 1345 (D.C. Cir. 1980). As we held in *Sea Robin*, these limitations apply as well to rate rules: "a Commission-initiated change in either the rates or their method of calculation can be accomplished only upon the agency's compliance with the strictures of section 5." 795 F.2d at 186.

In this case the Shippers argue that "once [the Commision] determined . . . that ANR's cashout surcharge mechanism was 'unjust and unreasonable,' [it] should . . . have rejected ANR's proposed increase in its cashout surcharge." Their seemingly straightforward claim is that because the $.4464/ Dth surcharge was calculated according to a mechanism the Commission held to be unjust and unreasonable, the surcharge must also be unjust and unreasonable, and the Commission was therefore bound to reject it as unlawful pursuant to § 4. For its part, the Commission argues that, when a pipeline has filed and the Commission has approved a method for calculating a particular rate, the pipeline's subsequent filing of a specific numerical value calculated by that method must be evaluated pursuant to § 4, which in this context limits the agency "to assuring that the . . . calculations conformed to the previously approved tariff mechanism." Consequently, "changes to the approved tariff mechanism itself could only be made in accordance with the strictures of NGA § 5."

The Commission's position in the orders under review is consistent with its precedent. In *Dakota Gasification Co.*, 77 F.E.R.C. ¶ 61,271, 62,146 (1996), it explained:

> [W]hen a pipeline has an approved mechanism in its tariff for the flowthrough of a particular type of cost and the pipeline makes a limited section 4 filing to recover newly incurred costs pursuant to that mechanism, the Commission's refund authority is very limited. Since the pipeline's limited section 4 filing would not propose to change the approved flowthrough mechanism, the Commission would have to proceed under section 5 to make any change in that mechanism.... The only rate change initiated by the pipeline in such a limited section 4 filing is the inclusion in the approved flowthrough mechanism of newly incurred costs. The Commission could, therefore, order refunds of the resulting proposed rate increase, in the limited circumstance of a finding that the costs were not of the type authorized for recovery under the approved flowthrough mechanism or that the pipeline was imprudent in incurring the new costs.

The Commission is surely correct that it could not change the mechanism in ANR's tariff except in a § 5 proceeding, for a rate rule in a tariff is itself a filed rate. And nothing in § 4 "gives the Commission the authority to reject, post hoc, a previously accepted [tariff] provision or to specify what should replace it." *Sea Robin*, 795 F.2d at 187.

The precise question here, however, is whether under § 4 the Commission could, as the Shippers maintain, nevertheless reject the pipeline's correctly calculated surcharge filing because the Commission no longer regarded the method of calculation to be just and reasonable. We agree with the Commission that it could not.

By allowing the pipeline first to file a rate rule, which it did in 1993, later to be followed by annual calculations according to that rule, the Commission effectively bifurcated its inquiry into the reasonableness of the resulting rates. When it initially approved the rate rule for ANR's cashout surcharge, the agency determined that it would produce just and reasonable results. Thereafter, the Commission properly reviewed the pipeline's surcharge filings only for compliance with the rate rule in its tariff; if the costs to be collected were

prudently incurred and the surcharge was calculated correctly, then the pipeline's § 4 filing was properly deemed just and reasonable.

In the course of the 2002 proceeding, the Shippers persuaded the Commission that the previously filed rate rule had proved to be unjust and unreasonable. Because the Commission had already approved it, however, the agency could change the underlying rule only by following the procedures prescribed in § 5.

The Tenth Circuit addressed a related question in *Northwest Pipeline Corp. v. FERC*, 61 F.3d 1479 (1995). There, the pipeline argued that

> Commission approval of a 'rate' is not always confined to the approval of a specific numeric value, but may instead extend to the approval of a calculational formula or 'rate rule' which, once approved, is established for purposes of the NGA. While specific numeric input data to such a formula may vary from year to year ... the formula itself does not change and therefore may be attacked only in the context of a Section 5 proceeding.

61 F.3d at 1490. In ruling for the Commission, the court did not reject the pipeline's reasoning, but held instead that "the Commission's order did not direct Northwest to calculate the [rate] *differently*, it simply ordered Northwest to calculate the [rate] *correctly*." *Id.*

Our holding today is the opposite side of the same coin: When the Commission finds a pipeline did calculate a rate correctly according to the rate rule in its tariff, the Commission must accept the § 4 filing despite any perceived flaws in the rate rule and may only then proceed under § 5 — as it has since done with respect to ANR's annual cashout surcharge, *see ANR Pipeline Co.*, 107 F.E.R.C. ¶ 63,006 (2004) — to devise and substitute a just and reasonable rate rule "to be thereafter observed."

Finally, the Shippers argue, in the alternative, that the Commission should have accepted the surcharge subject to refund. Pending its decision under § 4, the Commission may

"suspend the operation ... and defer the use" of a proposed rate for up to five months. Thereafter the rate "shall go into effect," but "the Commission may, by order, require the natural-gas company ... to refund any amounts" later found by the Commission to be unjust and unreasonable. 15 U.S.C. § 717c(e). This provision for acceptance of a rate subject to refund, which is the "only statutory exception to the rule prohibiting retroactive rate changes," is but "a necessary compromise to accommodate delays in the approval process." *East Tenn. Natural Gas Co. v. FERC*, 863 F.2d 932, 942 (D.C. Cir. 1988). Both the structure of and the rationale for the refund provision, therefore, make it inapplicable where the Commission lacks the authority to reject the rate filing as unjust and unreasonable. Hence the Commission properly held that "there can be no refund" when a pipeline files a calculation consistent with an approved rate rule. *ANR Pipeline Co.*, 103 F.E.R.C. at 61,205.

## III.   Conclusion

For the foregoing reasons, the petition for review is

*Denied.*